

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOHN LYNINGER, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:10-cv-00504-RCJ-RAM |
| JIM MOTSINGER et al., | ) ) | ORDER |
| Defendants. | ) ) ) | |

This case arises out of alleged age discrimination in employment. Nineteen motions are pending before the Court. For the reasons given herein, the Court grants the Motion to Amend Complaint (ECF No. 31), denies the Motion for Appointment of Counsel (ECF No. 61), grants the Motion for Extension of Time (ECF No. 66), denies the Motions for Sanctions and for Preliminary Injunction (ECF Nos. 34, 35, 59, 60, 68, 69, 74, 75, 76, 77, 86, 87, 103, 104), grants the Motion to Dismiss for Insufficient Process (ECF No. 26), and grants the Motion to Dismiss for Failure to Comply with Court Order and to Exhaust Administrative Remedies (ECF No. 57).

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff was employed by Defendant Interstate Oil Co. ("Interstate") from October 25, 2005 until he was terminated on February 19, 2010. He alleges discriminatory treatment by his employer and co-workers, including wrongful termination. Plaintiff, proceeding in pro se, sued ten Defendants (and potentially thousands of unnamed defendants) in this Court. The Complaint

1  can be read to plead a single cause of action for illegal age discrimination pursuant to the Age
2  Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The Second
3  Amended Complaint ("SAC") includes minor changes to the allegations.

4      Plaintiff previously filed eleven identical motions for preliminary injunction, wherein he
5  demanded reinstatement and back pay, as well as $1,000,000,000 as damages for an alleged
6  death threat by a supervisor, or, in the alternative, $5,000,000 plus $4500 per month for 58 years.
7  (*See* Proposed Order 1, ECF No. 17). The Court denied those motions. (*See* Order Oct. 22,
8  2010, ECF No. 52).

9      Two dispositive motions are pending before the Court: a Motion to Dismiss for
10 Insufficient Process (ECF No. 26) and a Motion to Dismiss for Failure to Comply with Court
11 Order and Exhaust Administrative Remedies (ECF No. 57). Plaintiff has filed several motions
12 for sanctions, for various injunctive relief, for leave to amend, and for appointment of counsel.
13 (*See* ECF Nos. 31, 34, 35, 59, 60, 61, 66, 68, 69, 74, 75, 76, 77, 86, 87, 103, 104). His motions
14 for a settlement conference and to compel discovery are pending before the magistrate judge.
15 (*See* ECF Nos. 82, 83).

16 **II.    LEGAL STANDARDS**

17     **A.    Rules 4(m) and 12(b)(5)**

18 > If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

22 Fed. R. Civ. P. 4(m). A court may dismiss a complaint for insufficient service of process. Fed.
23 R. Civ. P. 12(b)(5). A district court must extend time for good cause shown. *Lemoge v. United*
24 *States*, 587 F.3d 1188, 1198 (9th Cir. 2009). The party desiring an extension of time bears the
25 burden of proving good cause, and "[g]ood cause exists only when some outside factor[,] such as

reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Profit v. Americold Logistics, LLC*, 248 F.R.D. 293, 296 (N.D. Ga. 2008) (quoting *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (citing *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991))) (internal quotation marks omitted) (second alteration in original). However, excusable neglect may constitute good cause if a plaintiff can also show actual notice to the defendant, a lack of prejudice to the defendant, and severe prejudice to the plaintiff. *Lemoge*, 587 F.3d at 1198 n.3. Even if a party fails to show good cause, a district court may extend time for excusable neglect alone. *Id.* at 1198. A district court has discretion to extend time retroactively. *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).

### B. Rule 11

Plaintiff does not identify a basis for sanctions in his motions, but it is clear that Rule 11 is the applicable rule, because Plaintiff complains of alleged falsehoods in opposing pleadings. Under Rule 11, when an attorney files a signed pleading with the court, he certifies inter alia that to the best of his knowledge "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b), (b)(3). A party aggrieved under this rule may file a motion for sanctions. Fed. R. Civ. P. 11(c)(2). The Court, if it grants the motion, may impose sanctions no greater than what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Sanctions may include "nonmonetary directives," penalties to the court, or payment of the movant's reasonable attorney's fees and expenses directly resulting from the violation. *Id.*

### C. Preliminary Injunction

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

Under the traditional test, a plaintiff must show: (1) a strong likelihood of success

> on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Ninth Circuit has explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

The Ninth Circuit has since ruled that the sliding scale test remains viable when there is a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052–53 (9th Cir. 2010). This case presents some difficulty in light of *Winter* and prior Ninth Circuit cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court

1  stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely*
2  to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary
3  relief, that the balance of equities tips in his favor, *and* that an injunction is in the public
4  interest." *Winter*, 129 S. Ct. at 374 (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218–19 (2008);
5  *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456
6  U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive
7  test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits
8  prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the
9  sliding-scale test, the *Winter* Court specifically emphasized the fact that the word "likely"
10 modifies the irreparable-injury prong, *see id.* at 375, and the word modifies the success-on-the-
11 merits prong the same way, *id.* at 374. In dissent, Justice Ginsburg opined that she did not
12 believe the Court was abandoning the rule that it was permissible to "award[ preliminary
13 injunctive] relief based on a lower likelihood of harm when the likelihood of success is very
14 high." *Id.* at 392 (Ginsburg, J., dissenting). But Justice Ginsburg, like the majority, did not
15 address whether she believed relief could be granted when the chance of success was *less than*
16 likely. A "lower likelihood" is still *some* likelihood. We are left with the language of the test,
17 which requires the chance of success on the merits to be at least "likely."
18      In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the
19 merits. "Likely" means "having a high probability of occurring or being true."
20 Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. Black's
21 defines the "likelihood-of-success-on-the-merits test" as "[t]he rule that a litigant who seeks
22 [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary*
23 1012 (9th ed. 2009). The Court must reconcile the cases by interpreting the *Cottrell* "serious
24 questions" requirement to be in harmony with the *Winter/Selecky* "likelihood" standard, not as
25 being in competition with it. The movant must therefore show at least a reasonable probability of

success on the merits. A claim can be weaker on the merits if it raises "serious questions" and the amount of harm the injunction will prevent is very great, but the chance of success on the merits cannot be weaker than "likely," meaning there is a reasonable probability of success.

## III. ANALYSIS

### A. Motion to Amend Complaint (ECF No. 31)

A plaintiff may amend his complaint once as a matter of course within twenty-one days of being served an Answer or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(b). The Second Amended Complaint (ECF No. 31-1) was filed nine days after the Motion to Dismiss under Rules 12(b)(2) and (5). Therefore, Plaintiff does not need permission to amend. The motion to amend is granted.

### B. Motion for Appointment of Counsel (ECF No. 61)

Plaintiff requests the appointment of counsel to prosecute his case. There is no right to appointed counsel in a civil case, but a court may under "exceptional circumstances" appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). *See Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). The Court must consider the likelihood of success on the merits and the ability of the petitioner to articulate his claims in light of the complexity of the legal issues involved. *Id.* In this case, Plaintiff has sufficiently communicated the nature of his claims to the Court, and there is a low chance of success on the merits. The Court denies the motion for appointment of counsel.

### C. Motion for Extension of Time (ECF No. 66)

Plaintiff requests leave to file "a late pleading" due to hospitalization in November 2010 and December 2010 from food poisoning. Plaintiff does not identify which pleading(s) he wishes to file late, but he filed several motions on the same day he filed the present one, and he has filed eight additional motions on three separate days since then. The Court grants this motion and accepts as timely all motions filed.

D.  **Motions for Sanctions (ECF Nos. 34, 69, 74, 75, 76, 77, 103, 104)**

Plaintiff has filed several motions for sanctions. Motion No. 34 requests "criminal and civil sanctions and penalties" against opposing counsel for allegedly filing documents containing untrue statements. Plaintiff identifies no particular statement of fact made by opposing counsel that he believes is false, but refers generally to pleadings and evidence counsel has filed. The Court denies this motion.

In Motion No. 69, Plaintiff alleges that Defendants' claims that Plaintiff spilled fuel at work, put the wrong fuel into customers' tanks, has been in numerous traffic accidents, and has received numerous traffic violations and complaints are false. Counsel made these claims in a signed pleading. (*See* Opp'n Mot. Prelim. Inj. 3:7–12, Sept. 24, 2010, ECF No. 45). That opposition cites to paragraph 4 of the attached Declaration of Jeff Barnes (ECF No. 45-1), which supports of each of the claims. The Barnes Declaration further cites to evidence supporting each of the relevant, sworn claims therein, which evidence is also attached to the Opposition. (*See* Barnes Decl. ¶ 4(a)–(k), Sept. 21, 2010, ECF No. 45-1 (citing *id.*, Exs. A–M)). The motion for sanctions is therefore denied.

In Motions No. 74, 75, 76, 77, 103, and 104, Plaintiff requests sanctions under 18 U.S.C. §§ 1001–1003, which are criminal statutes penalizing certain fraud upon federal courts. These statues provide no implied private right of action for sanctions or other relief. *See Fed. Sav. & Loan Ins. Co. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987). The motions are denied.

E.  **Motions for Injunctive Relief (ECF Nos. 35, 59, 60, 86, 87)**

In Motion No. 35, Plaintiff requests an injunction against Defendants reporting negative employment performance to any prospective employer, which Plaintiff characterizes as slander. The following passage explains the Court's inability to issue such an injunction:

> In addition to the First Amendment's heavy presumption against prior restraints, courts have long held that equity will not enjoin a libel. *See Nebraska Press Ass'n*, 427 U.S. at 559, 96 S. Ct. 2791; *American Malting Co. v. Keitel*, 209

> F. 351, 354 (2d Cir. 1913); *Kramer v. Thompson*, 947 F.2d 666, 677–78 (3d Cir. 1991) (citing cases); *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.") (internal citation omitted). Indeed, for almost a century the Second Circuit has subscribed to the majority view that, absent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases. *See American Malting Co.*, 209 F. at 354 ("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States ....") (citation omitted); *Crosby*, 312 F.2d at 485 (reaffirming the common law rule of *American Malting*). The holding in *American Malting* rests in large part on the principle that injunctions are limited to rights that are without an adequate remedy at law, and because ordinarily libels may be remedied by damages, equity will not enjoin a libel absent extraordinary circumstances.

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001). The Ninth Circuit has permitted the injunction of alleged defamatory speech in very narrow circumstances where the consequences could be the failure of a hospital and the speech was "so misleading as to be fraudulent." *See San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997) (en banc). Here, Plaintiff has not shown that he is likely to succeed on the merits of his claim of fraudulent statements, and the harm he faces from such statements is not nearly so great as to support an prior restraint against speech. Also, Defendants have provided evidence, discussed *supra*, of Plaintiff's poor work performance. Motions No. 59, 60 appear to be based on the same alleged defamation. These motions for preliminary injunction are denied.

Motions No. 86 and 87 appear to be requests to enjoin Defendants' counsel from filing any pleadings in their clients' defense generally, on the ground that such flings constitute unlawful retaliation. This argument is rejected, and the motions are denied.

F. **Miscellaneous Motion (ECF No. 68)**

Plaintiff has filed what appears to be a notice, not a motion, which complains that Defendants are represented by counsel and he is not. The attached proposed orders include $250,000 in "preliminary injunctive relief" and reinstatement of Plaintiff's health benefits.

Neither form of relief is appropriate for a preliminary injunction because neither damages nor reinstatement would maintain the status quo, and a lack of counsel is not grounds for relief on the underlying claims. The motion is denied.

### G. Motions to Dismiss

#### 1. Insufficient Service of Process (ECF No. 26)

Interstate, Jim Motsinger, Terry Andrews, Charles Pena, Laurie Andrews, Greg Andrews, Brent Andrews, Larry Chillemi, and Dominic Dacay (collectively, "Movants") move to dismiss for insufficient service of process. Movants allege that Plaintiff attempted service on all ten Defendants by personally serving Defendant Jeff Barnes, an employee of Interstate, at Interstate's Sparks, Nevada location.[1]

In Nevada, a legal entity with a registered agent, such as Interstate, must be served by personal service on the registered agent or by substitute service on the registered agent at the registered agent's address. Nev. Rev. Stat. § 14.020(2). Interstate's registered agent in Nevada is listed as Julien G. Sourwine at 4950 Kietzke Ln., Reno, NV, 89509. *See* http://nvsos.gov/sosentitysearch (last visited Jan. 13, 2011). Nor is Barnes an officer or service agent of Interstate. *See* Fed. R. Civ. P. 4(h)(1)(B); Nev. R. Civ. P. 4(d)(1). As to the individual Defendants, a natural person can normally only be served by personal or abode service. *See* Nev. R. Civ. P. 4(d)(6). Brent, Terry, Greg, and Laurie Andrews, Pena, Dacay, and Motsinger attest that they have never been personally served in this case, and that a Mr. David Delehant is Interstate's agent for service of process. (*See* Decls., ECF Nos. 26-1, 26-2, 26-3, 26-4, 26-6, 26-7, 26-9). Laurie Andrews also attests to having spoken with Chillemi on the telephone, and that he confirmed he has never been served. (*See* Suppl. Decl., Sept. 3, 2010, ECF No. 26-5). Delehant attests to having never been served. (Delehant Decl., Sept. 3, 2010, ECF No. 26-10).

---

[1] The address is 50 Lillard Dr., Sparks, NV 89434. *See* http://maps.google.com (last visited Jan. 13, 2011).

The federal rules permit service according to state law, by personal service, by abode service, or by agent service, but not by substitute service at a person's place of business. *See* Fed. R. Civ. P. 4(e). In response, Plaintiff does not dispute faulty service, but argues that the "motion to dismiss is extremely premature." The Court grants the motion.

2. **Failure to Comply with Court Order and Exhaust Administrative Remedies (ECF No. 57)**

In dismissing Plaintiff's previous motions for preliminary injunction, the Court ordered Plaintiff to enter into the record a copy of his charge of discrimination to the EEOC within fourteen days, so the Court could be satisfied of its ability to rule on Plaintiff's ADEA claim. (*See* Order, Oct. 4, 2010, ECF No. 52). Twenty-nine days later, Plaintiff filed his purported letter to the EEOC, which is dated February 26, 2010. (*See* Letter, Feb. 26, 2010, ECF No. 56, at 2).

Defendant Interstate suspects that Plaintiff fabricated the letter in order to manufacture jurisdiction. Because Interstate had never received any notice from the EEOC about any charge of discrimination until after the present case was filed, it became suspicious upon seeing Plaintiff's February 26, 2010 letter in the record and made a Freedom of Information Act ("FOIA") request to the EEOC. It received back an answer indicating that the EEOC had never received any letter dated from February 2010, but first received communications from Plaintiff after he filed the present lawsuit in August 2010. Defendants attach the record of Plaintiff's EEOC communications to the motion. Defendants ask the Court to dismiss for failure to comply with the Court's order. *See* Fed. R. Civ. P. 41(b). The Court was prepared to receive evidence at the hearing, so that Plaintiff could explain himself, but Plaintiff did not appear. The Court therefore grants the motion and dismisses the case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Amend Complaint (ECF No. 31) and

1  Motion for Extension of Time (ECF No. 66) are GRANTED.

2  　　　IT IS FURTHER ORDERED that the Motion for Appointment of Counsel (ECF No. 61)
3  and the Motions for Sanctions and for Preliminary Injunction (ECF Nos. 34, 35, 59, 60, 68, 69,
4  74, 75, 76, 77, 86, 87, 103, 104) are DENIED.

5  　　　IT IS FURTHER ORDERED that the Motion to Dismiss for Insufficient Process (ECF
6  No. 26) and the Motion to Dismiss for Failure to Comply with Court Order and to Exhaust
7  Administrative Remedies (ECF No. 57) are GRANTED.

8  　　　IT IS FURTHER ORDERED that the Clerk shall close the case. All other pending
9  motions are DENIED as moot.

10　　　IT IS SO ORDERED.

12 Dated this 23rd day of February, 2011.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　ROBERT C. JONES
　　　　　　　　　　　　　　　　United States District Judge